UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
T.S. HAULERS, INC.,

                         Plaintiff,

- against-

PHIL CARDINALE, BARBARA BLASS,
JOHN DUNLEAVY, TIMOTHY BUCKLEY,
JAMES WOOTEN, TOWN BOARD OF
THE TOWN OF RIVERHEAD, RICHARD
HANLEY, Planning Director of the Town of
Riverhead, LEROY BARNES, and
THE TOWN OF RIVERHEAD,

                         Defendants.
------------------------------------------------------------X

**OPINION AND ORDER**
**09 CV 0451 (SJF)(ARL)**

FEUERSTEIN, J.

On February 4, 2009, plaintiff T.S. Haulers, Inc. ("plaintiff") filed this action against the individual defendants comprising the Town Board of the Town of Riverhead[1]; the Town Board of the Town of Riverhead (the "Town Board"); Richard Hanley ("Hanley"), as planning director of the Town of Riverhead; Leroy Barnes ("Barnes"), as an employee of the Building Department of the Town of Riverhead; and the Town of Riverhead (the "Town") (collectively, "defendants"), pursuant to 42 U.S.C. §§ 1983 and 1988, alleging violations of its Fourteenth Amendment substantive and procedural due process and equal protection rights and a regulatory taking in violation of his Fifth Amendment rights. Defendants now move pursuant to Rule 12(b)(6) of the

---

[1] The complaint originally named Lou Boschetti, Ed Densieski, Richard O'Dea, Lyle Wells and Joseph Baier as the members of the Town Board of the Town of Riverhead. By order dated March 10, 2009, upon the parties' stipulation, the action was dismissed as against those defendants and defendants Phil Cardinale, Barbara Blass, John Dunleavy, Timothy Buckley and James Wooten were substituted in their stead.

1

Federal Rules of Civil Procedure to dismiss the complaint for failure to state a claim. For the reasons stated herein, defendants' motion is granted.

I. Background

A. Factual Allegations[2]

Plaintiff is a New York corporation with business offices located at 337 Edward Avenue, Calverton, New York. (Complaint [Compl.], ¶ 1).

At all relevant times, Hanley was the director of the Town's Department of Planning, (Compl., ¶ 4), and Barnes was the head of the Town's Building Department, (Compl., ¶ 5). Defendants Philip Cardinale ("Cardinale"), Barbara Blass ("Blass"), John Dunleavy ("Dunleavy"), Timothy Buckley ("Buckley") and James Wooten ("Wooten") (collectively, "the individual Town Board defendants") are presently the elected council members of the Town Board. (Compl., ¶ 6). Cardinale is also the Town's present supervisor. (Compl., ¶ 8).

Plaintiff owns approximately fifty-seven (57) acres of land located at 3968 Middle Country Road in Calverton, New York ("the property"). (Compl., ¶ 14). Prior to 2005, the property was located in an industrial "A" light industry zone. In May 2005 the property was re-zoned to an agricultural protection zone ("APZ"). (Compl., ¶¶ 15, 18, 40).

In or about 1995 or 1996, plaintiff applied to the Town for a special permit to operate a sand mine and related structures and to process sand and gravel. (Compl., ¶ 16). In 1997, the Town's Zoning Board of Appeals ("the Zoning Board") granted plaintiff's application for an

---

[2] The factual allegations are taken from the complaint and from documents of which I have taken judicial notice. They do not constitute findings of fact by the Court.

2

interpretation and variance that sand mining would be deemed a non-nuisance industry under the Town Code in effect at that time. (Id.) In February 1998, the New York State Department of Environmental Conservation ("DEC") issued plaintiff a mining permit. (Compl., ¶ 17).

In or about August 1998, the Town enacted a statute banning sand mining in the Town's Industrial A zoning use district. (Compl., ¶¶ 18, 19).

Between the years 2000 and 2001, the Town denied plaintiff's repeated applications for a special permit for mining, (Compl., ¶ 17), and also denied plaintiff a permit for outside storage of sand and gravel, (Compl., ¶ 36). Plaintiff alleges that the Town continued to issue special permits for mining "to those individuals that it preferred and not to others such as Plaintiff * * *," (Compl., ¶ 18; see also ¶¶ 21-34, 39), and "granted identical mining permits and outside storages * * * to numerous [other] individuals in almost every zone in the town," (Compl., ¶ 36; see also ¶ 37). In 2002, plaintiff voluntarily ceased mining on the property pursuant to a court-ordered stipulation. (Compl., ¶¶ 18, 35).

In or about September 2001, plaintiff commenced a proceeding in the Supreme Court of the State of New York, County of Suffolk ("the state court"), pursuant to Article 78 of the New York Civil Practice Law and Rules ("the Article 78 proceeding"), seeking to annul and set aside the Town Board's decision dated September 4, 2001 denying plaintiff's application for a special permit for mining. (Liccione Decl., Ex. B). By memorandum and order April 2, 2002, the state court (Hall, J.) denied plaintiff's Article 78 proceeding, holding, *inter alia*: (1) that defendants' action in limiting the hearing on plaintiff's special use permit application to review under Town Code Section 108-45(B)(6) was rational; (2) that plaintiff failed to meet its heavy burden to establish an improper motivation sufficient to sustain its equal protection claim; and (3) that

3

defendants had a rational basis to deny plaintiff's application for a special permit. (Liccione Decl., Ex. C).

On June 21, 2001, plaintiff commenced an action in this Court against the Town, James Lull, Cardinale and Christopher Kent, in their individual and official capacities as councilmen for the Town, which was assigned to the Honorable Arthur D. Spatt under docket number 01-cv-4219 ("the prior federal action"). In that action, plaintiff alleged, *inter alia*, that it owned the subject property; that the property was located within an Industrial A zoning district; that in 1997 the Town Board denied plaintiff's application for a special permit for sand mining; that on or about February 23, 1998, the DEC issued plaintiff a special permit for sand mining; that the Town subsequently re-zoned the property; that by order dated May 10, 1999, the state court directed plaintiff to submit an application for a special permit under Town Code Section 108-45(B)(6); that the state court subsequently directed the Town to process plaintiff's application for a special permit; that in early 2000, the Town's Planning Board recommended denying plaintiff's application for a special permit on the ground that the sand mining would violate the section of the Town Code which prohibited outdoor storage of such material; that the Town Board voted against plaintiff's application for a sand permit; that plaintiff thereafter commenced an Article 78 proceeding in state court, which nullified the Town Board's decision; that no new hearing had been scheduled as of the date of that complaint regarding plaintiff's application for a special permit; that defendants granted the applications of other entities for special permits permitting sand mining; and that defendants were selectively applying its laws against plaintiff. (Complaint in action under docket number 01-cv-4219 [2001 Compl.], ¶¶ 10, 12, 14-16, 26, 28-31, 35-37, 40-44, 50-79). Plaintiff asserted claims in that action pursuant to 42 U.S.C. § 1983 for violations

of its Fourteenth Amendment substantive and procedural due process and equal protection rights and for prima facie tort. (2001 Compl., ¶¶ 83-125). By memorandum and order dated March 26, 2002, Judge Spatt, *inter alia*, dismissed plaintiff's procedural due process claim on the basis that "plaintiff sought meaningful review of the Town's decision in the state judicial system" and that "[t]he availability of such recourse, as a matter of law, preclude[d] finding that the plaintiff ha[d] stated a claim for the denial of its procedural due process rights." T.S. Haulers, Inc. v. Town of Riverhead, 190 F.Supp.2d 455, 465 (E.D.N.Y. 2002). By subsequent order filed May 8, 2003, Judge Spatt granted defendants' motion to dismiss plaintiff's remaining claims based on the doctrine of collateral estoppel, finding, *inter alia*: (1) that plaintiff's equal protection and prima facie tort claims were fully adjudicated and rejected on the merits by the state court in the Article 78 proceeding and that plaintiff failed to meets its burden of showing lack of full or fair opportunity to litigate those issues; and (2) that the issues related to the substantive due process claim were explicitly addressed in the Article 78 proceeding and that the state court's determination that plaintiff failed to meet its heavy burden of establishing an improper motive precluded a determination that the defendants violated its substantive due process rights. (Liccione Decl., Ex. E). Judgment was entered in that case in favor of defendants and against plaintiff on May 13, 2003. (DE 34).

On June 4, 2002, the Town commenced an action in the state court against plaintiff alleging, *inter alia*, that notwithstanding the denial of plaintiff's special permit application, which was sustained by the state court, plaintiff continued to utilize the property for mining, processing, storing and selling soil, sand and gravel in violation of Chapters 108 and 52 of the Town Code. On March 26, 2004, judgment was entered in that state court action (Berler, J.)

permanently enjoining plaintiff from occupying and using the subject property for mining and/or processing soil, sand and/or gravel. (Liccione Decl., Ex. K).

On or about January 6, 2006, defendants commenced a proceeding in the state court against the DEC and plaintiff, which was assigned index number 1293-06, seeking to have the DEC revoke the plaintiff's mining permit. (Compl., ¶ 41). That proceeding was dismissed and the dismissal was affirmed on appeal by order dated April 8, 2008. (Compl., ¶ 41).

Thereafter, defendants commenced a second proceeding in the state court against the DEC and plaintiff, which was assigned index number 07-16555, again seeking to have the DEC revoke plaintiff's mining permit. (Compl., ¶ 42). On March 3, 2008, the state court dismissed that proceeding and no appeal was taken from that order of dismissal. (Id.).

Defendants also commenced an action in the state court against plaintiff seeking to hold plaintiff in contempt of an order of Judge Hall. (Compl., ¶ 43). Following a trial, that action was dismissed. (Id.) The Town has filed a notice of appeal of that decision. (Id.)

C. Procedural History

On February 4, 2009, plaintiff commenced this action against defendants pursuant to 42 U.S.C. §§ 1983 and 1988, asserting claims for violations of its Fourteenth Amendment substantive and procedural due process and equal protection rights and a regulatory taking in violation of its Fifth Amendment rights. Plaintiff seeks compensatory damages in an unidentified amount, injunctive relief, punitive damages, and costs and attorney's fees.

Defendants now move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint for failure to state a claim.

## II. DISCUSSION

### A. Standard of Review

The standard of review on a motion made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is that a plaintiff plead sufficient facts "to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). The pleading of specific facts is not required; rather a complaint need only give the defendant "fair notice of what the * * * claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Twombly, 550 U.S. at 555, 127 S.Ct. 1955). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557, 127 S.Ct. 1955). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. 544, 127 S.Ct. at 1959. The plausibility standard requires "more than a sheer possibility that defendant has acted unlawfully." Iqbal, ___ U.S. ___, 129 S.Ct. at 1949.

In deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008), cert. denied, 128 S.Ct. 2964, 171 L.Ed.2d 906 (2008) (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002)). However, this tenet "is inapplicable to legal conclusions. Threadbare recitals of

the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, ___ U.S. ___, 129 S.Ct. at 1949. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 1950.

The Court must limit itself to the facts alleged in the complaint, which are accepted as true; to any documents attached to the complaint as exhibits or incorporated by reference therein; to matters of which judicial notice may be taken; or to documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. Chambers, 282 F.3d at 152-153 (citing International Audiotext Network, Inc. v. American Tel. and Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)). "A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." Global Network Communications, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006). Accordingly, I have considered the pleadings, decisions and orders in the prior state and federal court actions for the sole purpose of establishing the fact of those litigations and the claims raised therein.

B. Equal Protection and Due Process Claims

Defendants contend that plaintiff's equal protection and substantive and procedural due process claims are barred by the doctrines of *res judicata* and collateral estoppel, since those claims were previously litigated in both state court and this Court.

"A 'right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties.'" Merrill v. Town of Addison, 763 F.2d 80, 83 (2d Cir. 1985) (quoting Montana v. United States,

440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979)). "Such preclusive effect * * * applies to federal questions decided by state courts, including claims brought under 42 U.S.C. § 1983." Id. at 83-84; see also Allen v. McCurry, 449 U.S. 90, 95, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) ("The federal courts generally have * * * consistently accorded preclusive effect to issues decided by state courts.") "[F]ederal courts [must] give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." Allen, 449 U.S. at 96, 101 S.Ct. 411. Federal law is applied to determine the preclusive effect of a prior federal judgment, whereas state law is applied to determine the preclusive effect of a prior state court judgment. See Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d Cir. 2002).

Under the doctrine of *res judicata*, or claim preclusion, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Allen, 449 U.S. at 94, 101 S.Ct. 411; see also Marvel, 310 F.3d at 286-287. However, "res judicata does not bar subsequent litigation when the court in the prior action could not have awarded the relief requested in the new action." Marvel, 310 F.3d at 287. Accordingly, the doctrine of *res judicata* is unavailable to bar a Section 1983 action commenced by an unsuccessful Article 78 petitioner seeking monetary damages, such as the instant action, "because a state court entertaining an Article 78 proceeding does not have the power to award the full measure of relief available in subsequent section 1983 litigation." Vargas v. City of New York, 377 F.3d 200, 205 (2d Cir. 2004).

Nonetheless, the related but distinct doctrine of collateral estoppel, or issue preclusion, is applicable in such cases. See, e.g. Genova v. Town of Southampton, 776 F.2d 1560, 1561 (2d Cir. 1985)(holding that a plaintiff may not re-litigate factual issues decided in a prior state court

9

action that are central to the constitutional claims it asserts in federal court if New York law would bar him from raising those issues in a subsequent suit in state court). Collateral estoppel precludes a party from relitigating in a subsequent action or proceeding an issue of fact or law that was raised in a prior action or proceeding and decided against that party or those in privity with that party. See Marvel, 310 F.3d at 288; Owens v. Treder, 873 F.2d 604, 607 (2d Cir. 1989).

1. Equal Protection Claim

The initial determination is whether the "issue" alleged by plaintiff, i.e., that the Town selectively enforced its Town Code and treated plaintiff less favorably than other similarly situated entities, was actually and necessarily decided by the state court in the Article 78 proceeding.

In the Article 78 petition, plaintiff alleged, *inter alia*, that the Town had "disparately treated [plaintiff] differently from other similarly situated businesses" in the Town. (Liccione Decl., Ex. B, ¶¶ 25-36). Specifically, plaintiff asserted the following factual allegations:

(1) That it owns property within the Town, (Liccione Decl., Ex. B, ¶ 1);

(2) That in the summer of 1998, the Town outlawed all mining, (id., ¶ 21);

(3) That plaintiff applied for a special permit to conduct mining operations on its property, (see id., ¶¶ 2, 5, 11);

(4) That the Town Board denied plaintiff's application in September 2001, (id., ¶¶ 7, 18); and

(5) That the Town treated plaintiff differently than similarly situated businesses for which it granted applications for special permits, (id., ¶¶ 25-36, 50).

Plaintiff identified that following entities, among others, as similarly situated to itself and whose applications for special permits to conduct mining operations were granted:

(1) Island Water Park, Inc., which intended to use its property to create two (2) water skiing lakes, in November 2000, (Liccione Decl., Ex. B, ¶¶ 26-29);

(2) The Woods at Cherry Creek, LLC in April 2001, (id., ¶ 30);

(3) PRG Inc., (id., ¶¶ 31-33); and

(4) Suffolk Cement, (id., ¶ 25).

By order dated April 2, 2002, Judge W. Bromley Hall, *inter alia*, denied plaintiff's equal protection claim on the merits, finding that the applications of the entities alleged by plaintiff to be similarly situated to itself involved different situations and different provisions of the Town Code than those relating to plaintiff's application and that plaintiff had failed to meet its heavy burden of establishing that defendants' selective treatment of it was motivated by an improper purpose, i.e., an intent to discriminate on the basis of impermissible considerations, such as race or religion; as retaliation for plaintiff's exercise of its constitutional rights; or malice. (Liccione Decl., Ex. C).

In this case, plaintiff again raises an equal protection claim based upon allegations that it is being treated differently than other similarly situated property owners. (Compl., ¶¶ 21-39). In this action, plaintiff alleges the following facts relevant to its equal protection claim:

(1) That it owns property located within the Town, (Compl., ¶ 14);

(2) That in approximately 1997, the Town statutorily banned all mining, (Compl., ¶¶ 18, 20);

(3) That plaintiff applied for a special permit in 1995/1996, (Compl., ¶ 16);

11

(4) That the Town denied plaintiff's application three (3) times between 2000-2001, (Compl., ¶ 17); and

(5) That the Town continued to issue special permits for mining to businesses other than plaintiff despite its ban on mining, (Compl., ¶¶ 18, 36-37).

Plaintiff identifies the following entities as the other businesses whose applications for special permits were granted by the Town:

(1) An unidentified entity who intended to use its property for a water park and ski lakes, (Compl., ¶¶ 21, 39);

(2) Woods at Cherry Creek in April 2001, (Compl., ¶¶ 22-25, 39);

(3) Suffolk Cement Products, Inc. in approximately August 2002, (Compl., ¶ 26);

(4) Riverhead Sound Associates, LLC in May 2004, (Compl., ¶¶ 27-28);

(5) Riverhead Lyons & Garrone in 2004, (Compl., ¶ 29);

(6) NF Development, LLC in approximately February 2005, (Compl., ¶ 30);

(7) Peconic Propane, Inc., (Compl., ¶¶ 31-32); and

(8) PRG, Inc., (Compl., ¶ 33)

Under New York law, collateral estoppel precludes a party from relitigating an issue when: "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." Vargas, 377 F.3d at 205-206 (quotations and citation omitted). Clearly, the issue of whether defendants selectively enforced its Town Code and treated plaintiff differently than other similarly situated entities was actually and necessarily decided in the Article 78 proceeding. Although plaintiff identifies four (4) additional similarly situated

businesses that it alleges received more favorable treatment than itself, the issues remain the same in this action as in the first proceeding: (1) whether entities utilizing their properties differently than plaintiff and which are governed by different provisions of the Town Code than plaintiff are "similarly situated" to plaintiff; and (2) whether defendants' disparate treatment of plaintiff was motivated by an improper purpose. The "new" facts asserted by plaintiff are merely additional examples of the conduct of which plaintiff has complained since the Article 78 proceeding. Significantly, notwithstanding the additional examples of the purported disparate treatment other entities have received at the hands of defendants, the complaint fails to allege any additional conduct taken by defendants with respect to plaintiff itself which violated its equal protection rights. Rather, plaintiff's equal protection claim is based only on its allegation that defendants denied its applications for a special permit in 2000 and 2001, which was actually raised and necessarily decided in the Article 78 proceeding.[3]

Moreover, it is undisputed that plaintiff had a full and fair opportunity to litigate its equal protection claim in the Article 78 proceeding. Accordingly, the doctrine of collateral estoppel bars plaintiff from maintaining its equal protection claim in this action. Therefore, the branch of defendants' motion seeking dismissal of plaintiff's equal protection claim is granted and that claim is dismissed.

2. Substantive Due Process Claim

In the Article 78 proceeding in state court, plaintiff alleged, *inter alia*, that the Town's

---

[3] Plaintiff's allegation that defendants unsuccessfully sought to revoke the mining permit issued to it by the DEC in 2006 is a red herring, since that conduct does not amount to a constitutional violation.

13

failure to consider plaintiff's application for a special permit under Section 108-45(B)(5) of the Town Code "violate[d] all concepts of due process and basic fairness * * *" and was without rational basis, and that the Town's denial of its application was arbitrary and capricious. (Liccione Decl., Ex. B, ¶¶ 13, 37-50). Judge Hall rejected plaintiff's claim that the denial of its application was arbitrary and capricious, finding that the Town "had a rational basis to deny [plainitff's] application as presented." (Liccione Decl., Ex. C). Judge Hall also denied plaintiff's claims on the basis that defendants' conduct in limiting review of plaintiff's application under Section 108-45(B)(6) of the Town Code was rational. (Id.).

In this action, plaintiff alleges, *inter alia*, that "[t]he actions of the Defendant, in denying permits to the Plaintiff, taking all actions possible to stop Plaintiff from using his property and engaging in court intervention, were deliberate and intentional and in violation of Plaintiff's rights to due process." (Compl., ¶ 62). Plaintiff again challenges defendants' conduct as "arbitrary" and without "rational basis." (See, e.g. Compl., ¶¶ 48, 51, 53, 59, 61).

In order to establish a substantive due process claim, a plaintiff must demonstrate "that the state action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" Okin v. Village of Cornwall-on-Hudson Police Dept., 577 F.3d 415, 431 (2d Cir. 2009)( quoting County of Sacramento v. Lewis, 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)). In land use regulation cases, such as this case, substantive due process protects a plaintiff from "arbitrary or irrational [governmental] action" that deprives the plaintiff of a property interest. See Brady v. Town of Colchester, 863 F.2d 205, 215 (2d Cir. 1988). In order to establish a substantive due process claim in such cases, the plaintiff must demonstrate that the defendant's conduct "bears no rational relationship to any legitimate governmental

purpose." Ecogen, LLC v. Town of Italy, 438 F.Supp.2d 149, 156 (W.D.N.Y. 2006).

The issue related to plaintiff's substantive due process claim in this case, i.e., whether defendants' conduct was arbitrary or irrational, was actually raised and necessarily decided in the prior Article 78 state court proceeding. A determination by this Court on plaintiff's substantive due process claim would require reconsideration of the very issues on which the state court denied plaintiff's Article 78 proceeding, i.e., that defendants' denial of plaintiff's application for a special permit was rational and was not arbitrary and capricious. Accordingly, the doctrine of collateral estoppel bars plaintiff from re-asserting its substantive due process claim in this action. Therefore, the branch of defendants' motion seeking dismissal of plaintiffs' substantive due process claim as barred by the doctrine of collateral estoppel is granted.

### 3. Procedural Due Process Claim

In the prior federal action, plaintiff alleged, *inter alia*, that defendants' conduct "in delay[ing], obstructing, hindering and otherwise unlawfully, arbitrarily, capriciously and without jurisdiction, failing to act to process and grant plaintiff's mining permit, [in] chang[ing] the zone improperly, [in] ban[ning] mining improperly, [in] tak[ing] plaintiff to the State Court on numerous occasions, and [in] failing to properly process plaintiff's application over a period of years, and thereby refusing to obey the State Supreme Court Orders, deprived plaintiff of its right to lawfully use [its] property and violated [plaintiff's] constitutional rights, which action were without due process * * *." (Liccione Decl., Ex. D, ¶ 116). Judge Spatt dismissed plaintiff's procedural due process claim on the basis that "plaintiff sought meaningful review of the Town's decision in the state judicial system" and that "[t]he availability of such recourse, as a matter of

15

law, preclude[d] finding that the plaintiff ha[d] stated a claim for the denial of its procedural due process rights." T.S. Haulers, Inc. v. Town of Riverhead, 190 F.Supp.2d 455, 465 (E.D.N.Y. 2002).

Similarly, plaintiff bases its due process claim in this action upon the allegation that defendants "in denying permits to the Plaintiff, taking all actions possible to stop Plaintiff from using his property and engaging in court intervention, were deliberate and intentional and in violation of Plaintiff's rights to due process." (Compl., ¶ 62).

Since this claim involves a prior judgment of this Court, as opposed to the state court, federal law applies to determine whether this claim is barred by the doctrine of collateral estoppel. See, e.g. Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt International B.V. v. Schreiber, 327 F.3d 173, 180, n. 2 (2d Cir. 2003). Under federal law, collateral estoppel precludes a party from re-litigating an issue when: "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was a full and fair opportunity to litigate the issue in the prior proceeding and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." Carney v. Philippone, 332 F.3d 163, 169-170 (2d Cir. 2003) (citing N.L.R.B. v. Thalbo Corp., 171 F.3d 102, 109 (2d Cir. 1999)).

The issues raised by plaintiff's procedural due process claim in both federal actions are identical: whether defendants' conduct in denying plaintiff's application for a special permit, re-zoning the property, banning mining and commencing state court proceedings against plaintiff deprived plaintiff of its property interest without due process of law. That issue was actually litigated in the prior federal action and was actually decided by Judge Spatt by his memorandum

and order dated March 26, 2002. Plaintiff does not contend that he did not have a full and fair opportunity to litigate that issue in the prior federal action. Indeed, plaintiff submitted a memorandum in opposition to defendants' motion to dismiss that claim and, thus, actually litigated its procedural due process claim in the prior federal action. Accordingly, the doctrine of collateral estoppel bars plaintiff from relitigating its procedural due process claim in this action. Therefore, the branch of defendants' motion seeking dismissal of plaintiff's procedural due process claim is granted.

C. Section 1983 Claims

To the extent plaintiff's Section 1983 claims are not barred by the doctrine of collateral estoppel, they are otherwise time-barred.

Claims pursuant to 42 U.S.C. §1983 are governed by New York's three year statute of limitations. See Owens v. Okure, 488 U.S. 235, 249-250, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989); Curto v. Edmundson, 392 F.3d 502, 504 (2d Cir. 2004). Although state law governs the applicable limitations period, federal law governs when a claim accrues. See Covington v. City of New York, 171 F.3d 117, 121 (2d Cir. 1999). Generally, under federal law, a claim accrues when "the plaintiff knows or has reason to know of the injury which is the basis of his action." Id.

Plaintiff's allegations against defendants relate to conduct that occurred no later than September 4, 2001, when defendants denied its application for a special permit. This action was not commenced until February 4, 2009, more than seven (7) years later. Even assuming, *arguendo*, that plaintiff's cause of action did not accrue until after its Article 78 proceeding was

17

decided, that proceeding was dismissed on April 2, 2002, more than six and a half (6-1/2) years prior to the commencement of this action. It is clear that plaintiff was aware of his constitutional claims at that time, since, *inter alia*, it commenced prior proceedings raising those claims. Since plaintiff's claims regarding the denial of its application for a special permit accrued more than three (3) years prior to the filing of its complaint, those claims are time-barred.

Moreover, to the extent plaintiff is challenging to re-zoning of its property, that conduct occurred in May 2005 and plaintiff was clearly aware of that conduct at the time that it occurred. Since more than three (3) years and eight (8) months elapsed from the time of the re-zoning until the commencement of this action on February 4, 2009, those claims are also time-barred.[4] Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's Section 1983 claims as time-barred is granted.

D. Takings Claim[5]

To the extent the complaint raises a claim pursuant to the Takings Clause of the Fifth Amendment, i.e., that defendants' re-zoning of plaintiff's property constitutes a taking for which the Fifth Amendment requires just compensation, that claim is not yet ripe for review.

The Supreme Court has developed a two-prong inquiry to determine whether a takings claim is ripe for review in federal court. The first prong of the inquiry asks whether "the

---

[4] Again, plaintiff's allegation that the Town commenced state court proceedings in 2006 and 2007 to have plaintiff's DEC-issued mining permit revoked is of no moment, since those claims do not amount to constitutional violations and, thus, are irrelevant to plaintiff's Section 1983 claims.

[5] Plaintiff does not address this claim in its opposition.

18

government entity charged with implementing the regulations has reached a final decision regarding the regulations to the property at issue." Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City, 473 U.S. 172, 186, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). The second prong asks whether the plaintiff has sought "compensation through the procedures the State has provided for doing so." Id. at 194, 105 S.Ct. 3108; see also San Remo Hotel, L.P. v. City and County of San Francisco, California, 545 U.S. 323, 125 S.Ct. 2491, 162 L.Ed.2d 315 (2005). "[B]efore a plaintiff may assert a federal takings claim, he must first seek compensation from the state if the state has a 'reasonable, certain and adequate provision for obtaining compensation.'" Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 379-380 (2d Cir. 1995) (quoting Williamson, 473 U.S. at 194, 105 S.Ct. 3108).

Plaintiff does not allege that it has obtained a final decision regarding how it will be allowed to use its property following the 2005 re-zoning. However, even assuming, *arguendo*, that plaintiff has satisfied the first prong of the Williamson test for ripeness, it cannot state a valid takings claim because N.Y. Em. Dom. Proc. Law § 501, *et seq.*, provides a "reasonable, certain and adequate" procedure by which plaintiff may seek compensation for defendant's purported taking of its property, see, e.g. Island Park, LLC v. CSX Transp., 559 F.3d 96, 110 (2d Cir. 2009), but plaintiff has not utilized that state law procedure to seek compensation for defendants' regulatory taking of its property. Accordingly, plaintiff's taking claim is not ripe for review in this Court and must be dimissed.

III. Conclusion

For the reasons stated herein, defendants' motion to dismiss the complaint is granted and

19

the complaint is dismissed in its entirety with prejudice.[6] The Clerk of the Court is directed to enter judgment in accordance with this Order and to close this case.

SO ORDERED.

SANDRA J. FEUERSTEIN
United States District Judge

Dated: February 16, 2010
      Central Islip, N.Y.

---

[6] Since all of plaintiff's claims are dismissed, its punitive damages claims, and claims for costs and attorney's fees pursuant to Section 1988, are also dismissed. See, e.g. O'Hearn v. Spence-Chapin Services to Families and Children, Inc., 929 F.Supp. 136, 142 (S.D.N.Y. 1996) (dismissing plaintiff's punitive damages claim because all of the plaintiff's other claims had been dismissed). Moreover, in light of the determination herein, it is unnecessary to consider defendants' remaining contentions.